**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GERARDO AZPERA,<br>Plaintiff,<br>v.<br>FRYMAN, et al.,<br>Defendants. | No. 2:25-CV-3512-DMC-P<br><br><u>ORDER</u> |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2).

/ / /

/ / /

Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff asserts claims against the following defendants: (1) Fryman – Correctional Officer, Mule Creek State Prison (MCSP) A Yard, 2 Block; (2) Smith – Correctional Officer, MCSP A Yard, 2 Block; and (3) Sandoval – Correctional Officer, MCSP A Yard, 2 Block. See ECF No. 1, pgs. 1-4. Plaintiff alleges nine claims for relief. See id. at 5-13.

Claim I

Plaintiff's first claim alleges an Eighth Amendment violation due to being publicly strip searched by Defendants Smith and Sandoval instead of female officers, despite Plaintiff identifying as female. See id. at 5. Plaintiff asserts that, on September 21, 2025, Defendants Smith and Sandoval strip searched Plaintiff "for the whole building" and in front of Plaintiff's cellmate instead of in private with a female officer. Id. Plaintiff asserts a private screening should have been used to cover Plaintiff's "private parts." See id.

Claim II

Plaintiff's second claim alleges First, Eighth, and Fourteenth Amendment violations by Defendants Smith and "White Male" for illegally searching Plaintiff's cell and seizing Plaintiff's belongings. See id. at 6. Plaintiff contends Defendants Smith and White falsely accused Plaintiff of having "spice" in Plaintiff's cell as a retaliatory, harassing, and

targeted act because Plaintiff claims to not smoke or otherwise possess "spice." See id. Plaintiff asserts on September 21, 2025, Defendants Smith and White "searched my cell[,] taking very important personal belongings" without recording it on the cell search's paperwork. Id. Plaintiff claims Defendants Smith and White took personal pens, books, legal paperwork, and two books of stamps from Plaintiff's cell. See id. Plaintiff alleges she has receipts for these items, and not having pens leaves Plaintiff "vulnerable" with "nothing to write with." Id. Plaintiff asserts the First Amendment as a "[r]ight to courts" because "prison officials cannot take adverse action against me because I exercised the right to file a grievance." Id.

Claim III

Plaintiff's third claim alleges a First Amendment violation and retaliatory behavior by Defendant Smith and Perez, who is not named in the complaint, for illegally seizing Plaintiff's belongings. See id. at 7. Plaintiff asserts that the items seized were "not contraband," and seizure was retaliatory that "did not reasonably advance a legitimate correctional goal." Id. Plaintiff alleges "3 specific pens" seized "were given to me by a staff here at MCSP." Id. Plaintiff re-asserts defendants falsely accused Plaintiff of possessing "spice," to support the retaliation claim. See id.

Claim IV

Plaintiff's fourth claim alleges an Eighth Amendment violation by Defendant Fryman for failing to provide adequate mental health care. See id. at 8. Plaintiff alleges that, on September 22, 2025, Defendant Fryman approached Plaintiff's cell and asked whether Plaintiff wanted to attend an appointment with Plaintiff's "clinician." Id. Plaintiff asserts they asked to reschedule instead of attending and was subsequently approached by a healthcare representative and her co-worker to sign a "refusal for a healthcare grievance interview." Id. Plaintiff claims to have not been informed about the nature of the appointment and would not sign the refusal paperwork. See id. Plaintiff contends Defendant Fryman intentionally confused Plaintiff and did not explain that the appointment was for an important "healthcare grievance interview." Id.

/ / /

/ / /

Claim V

Plaintiff's fifth claim alleges an Eighth Amendment violation by Defendant Fryman for providing incomplete and inaccurate information about the disciplinary process. See id. at 9. Plaintiff asserts a need for "specific reasonable accommodation" due to a communication disability. Id. Plaintiff alleges Defendant Fryman intentionally miscommunicated with Plaintiff as a form of mental health discrimination that violates reasonable accommodation. See id.

Claim VI

Plaintiff's sixth claim alleges an Eighth Amendment violation by Defendant Sandoval for making false promises and allowing inmates to fight inside their cells. See id. at 10. Plaintiff asserts that, on August 26, 2025, at 8:30 a.m.; September 7, 2025, from 10:30 a.m., to 11:30 a.m.; September 16, 2025, at 9:52 a.m.; and on September 21, 2025, at 12:50 a.m., Defendant Sandoval put Plaintiff under imminent danger that threatens personal safety. See id. Plaintiff specifies dates and times without describing what happened on each. See id. Plaintiff asserts Defendant Sandoval allows inmates to fight and will not "protect me from violence by other inmates and instead allow the violence." Id. Plaintiff alleges asking Defendant Sandoval for help retrieving Plaintiff's pen after the search on September 21, 2025, but Defendant Sandoval responded, "No because it's about your pen." Id. Plaintiff contends Defendant Sandoval "plays favorites" with inmates because "inmate 239" openly passes around "contraband" like fans and a television after a search during lockdown. Id.

Claim VII

Plaintiff's seventh claim alleges an Eighth Amendment violation by Defendant Sandoval for transgender discrimination based on the same acts described under Claim VI. See id. at 11. Plaintiff claims Defendant Sandoval retaliated against "his own staff" by warning other inmates, but not Plaintiff, when staff are coming. Id. Plaintiff asserts Defendant Sandoval tells inmates he's "only 25" to justify breaking rules. Id. Plaintiff does not explain how transgender discrimination applies. See id.

/ / /

/ / /

Claim VIII

Plaintiff's eighth claim alleges a Fourteenth Amendment violation by Defendant Sandoval for sexual harassment. See id. at 12. Plaintiff alleges Defendant Sandoval told Plaintiff, "Let me find out you're a faggot [edited for grammar]." Id. Plaintiff asserts Defendant Sandoval repeats similar conduct, and Plaintiff "can't trust him to ever protect me . . . not knowing how much what he said affected me and hurt me." Id.

Claim IX

Plaintiff's ninth claim alleges a Fourteenth Amendment violation by Defendant Sandoval for gender discrimination based on the same acts described under Claim VIII. See id. at 13. Plaintiff asserts that, on September 2, 2025, at 4:30 p.m., Defendant Sandoval apologized to Plaintiff for calling Plaintiff a "faggot." Id.

## II. DISCUSSION

The Court finds that Plaintiff's Claim II and Claim III are cognizable against Defendant Smith for retaliatory seizure of Plaintiff's property. Plaintiff's remaining claims are defective for the reasons discussed below.

### A. Strip Search

It is undisputed that "strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir. 2003). "For example, the strip search of a male in front of female officers, if conducted for a legitimate penological purpose, would fail to rise to the level of an Eighth Amendment violation." Id. (citing Johnson v. Phelan, 69 F.3d 144, 150-51 (7th Cir. 1995)). To state an Eighth Amendment claim, the strip search must have been conducted in a harassing manner intended to humiliate and inflict psychological pain. Id. In Calhoun, officers allegedly made sexually explicit gestures during a search and forced the prisoner to perform sexually provocative acts unrelated to legitimate prison needs. See id at 938. Further, the guards of the opposite sex were "neither mere passerby nor performing the legitimate penological function of conducting or monitoring the

search; they were instead invited spectators." Id. at 940. Accordingly, the prisoner had sufficiently stated a claim under the Eighth Amendment. Id. The Ninth Circuit agreed, concluding that the Eighth Amendment "forbids conduct that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" Wood v. Beauclair, 692 F.3d 1041, 1050 (9th Cir. 2012) (quoting Gregg v. Georgia, 428 U.S. 153, 182-83 (1976)).

Here, Plaintiff's first claim alleges being publicly strip searched by Defendants Smith and Sandoval, male officers, instead of female officers. Plaintiff alleges that she was searched in front of others instead of in private but does not assert that the search was performed to humiliate and inflict psychological pain nor that the "spectators" were more than "mere passerby." Instead, Plaintiff says the "whole building" and their cellmate happened to be in view. Plaintiff does not allege Defendants Smith and Sandoval made any sexually explicit or inappropriate gestures during the search. Given strip searches are a procedurally harsh and restrictive condition of confinement that do not alone amount to an Eighth Amendment claim, Plaintiff does not contend Defendants Smith and Sandoval were without legitimate penological purpose. Further, Plaintiff was searched in her own cell which Plaintiff does not contend deviates from standard practice. Plaintiff also fails to state whether Plaintiff informed Defendants Smith and Sandoval that Plaintiff preferred female officers to perform the search. Plaintiff did not demonstrate how the strip search was "so without penological justification that it results in the gratuitous infliction of suffering."

The Court will provide Plaintiff with an opportunity to amend this claim.

**B. Due Process – Illegal Search and Seizure**

Where, as here, a prisoner alleges the deprivation of a liberty or property interest caused by the random and unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983 if the state provides an adequate post-deprivation remedy. See Zinermon v. Burch, 494 U.S. 113, 129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984). A state's post-deprivation remedy may be adequate even though it does not provide relief identical to that available under § 1983. See Hudson, 468 U.S. at 531 n.11. A due process claim is not barred, however, where the deprivation is foreseeable and the state can therefore be reasonably expected

to make pre-deprivation process available. See Zinermon, 494 U.S. at 136-39. An available state common law tort claim procedure to recover the value of property is an adequate remedy. See id. at 128-29.

Plaintiff's second and third claims allege Defendants Smith, "White Male," and non-party Perez illegally seized three pens, books, legal paperwork, and two books of stamps from Plaintiff's cell. This claim, however, is not cognizable because California provides an adequate post-deprivation remedy by way of a state tort act claim.

**C. Retaliation**

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the plaintiff must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

Here, Plaintiff's second and third claims allege Defendant Smith's search of Plaintiff's cell was an illegal retaliatory act that included seizure of pens and paperwork, depriving access to file grievances. Plaintiff alleges the retaliation was based on a false accusation that Plaintiff possessed "spice," an illicit substance that Plaintiff claims to not smoke or possess. Plaintiff claims the alleged retaliation to be specifically linked to Plaintiff having filed grievances, and the deprivation of pens leaves Plaintiff "vulnerable" with "nothing to write

with." Plaintiff claims the deprivation did not otherwise "reasonably advance a legitimate correctional goal." Thus, Plaintiff appears to establish prison officials took adverse action against them, the adverse action was taken because Plaintiff engaged in the protected conduct of filing grievances, the adverse action chilled Plaintiff's First Amendment rights by not being able to write, and the adverse action did not serve a legitimate penological purpose. While these, if taken as true, satisfy all four elements under Rhodes with respect to Defendants Smith and Perez, Plaintiff does not claim Defendant "White Male" acted in retaliation to Plaintiff filing grievances nor does Plaintiff name Defendant Perez in the complaint. Additionally, Plaintiff's complaint was handwritten which raises doubts on whether the deprivation of the mentioned pens and paper meaningfully chilled Plaintiff's First Amendment rights to access the courts or file grievances.

Plaintiff will be provided an opportunity to amend this claim.

**D. Medical Needs**

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

/ / /

/ / /

/ / /

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Here, Plaintiff's fourth and fifth claims allege Defendant Fryman failed to provide adequate mental health care by intentionally not informing Plaintiff that an appointment was for a "healthcare grievance interview." Although deliberate indifference to mental health that delays or interferes with medical treatment may give rise to a claim under the Eighth Amendment, Plaintiff does not specify how or why Defendant Fryman intentionally misled Plaintiff. Defendant Fryman allegedly informed Plaintiff of an "appointment with Plaintiff's 'clinician'," which appears to give sufficient notice. Plaintiff asserts they have documented reasonable accommodations for communication issues.

Plaintiff fails to demonstrate that the purported delay led to further injury because being asked to sign a "refusal for a healthcare grievance interview" is not a medical injury. Further, a "healthcare grievance interview" does not constitute medical treatment but rather a discussion about perceived procedural issues. Accordingly, absence or delay of a "healthcare grievance interview" does not create an "unnecessary, and wanton infliction of pain" as described in McGuckin nor comport with the factors under Lopez. Plaintiff describes asking Defendant Fryman to reschedule the appointment, demonstrating Plaintiff still had meaningful access to attend a "healthcare grievance interview." Plaintiff fails to assert that any subsequent mental health care was denied because of Defendant Fryman's alleged behavior, supported by Plaintiff's claim to have not signed refusal paperwork from healthcare representatives.

Plaintiff will be provided an opportunity to amend.

**E. Safety**

Prison officials have a duty to take reasonable steps to protect inmates from safety risks. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

Here Plaintiff's sixth and seventh claims allege Defendant Sandoval created safety risks by allowing inmates to fight inside their cells. Regarding the first requirement of substantial risk of serious harm, Plaintiff's cell is separate from other cells and so she is not in any danger of harm. Also, Plaintiff merely characterizes the danger as "fighting." Physical fighting, and the extent of it, is distinct from verbal, and Plaintiff provides no clarification. Separately, Plaintiff lists various dates and times without specifying the dates applicable to inmate fighting. Plaintiff also lists tangential issues of "falsely promising inmates things" and "allowing inmate 239 openly run around during lockdown passing around contraband from cell to cell." This would not place Plaintiff in any risk of serious harm because promises and inmates running around are not physically harmful to Plaintiff. So, Plaintiff has not sufficiently alleged facts showing Plaintiff to have been objectively incarcerated under conditions presenting a substantial risk of serious harm.

Next, Plaintiff must demonstrate that Defendant Sandoval subjectively knew of and

disregarded the risk. Plaintiff fails to particularize a subjective knowledge and disregard of such fighting to Defendant Sandoval. Not "trust[ing] [Defendant] Sandoval will protect [Plaintiff] from violence by other inmates" does not create "proof of more than a mere suspicion of danger" as required by Berg. Rather, lack of trust seems to align with a mere suspicion.

Given the lack of specificity, the undersigned will provide Plaintiff leave to amend this claim.

**D. Verbal Harassment**

Inmate sexual harassment claims, which allege sexually inappropriate touching and/or sexually inappropriate comments, require a careful assessment of the unique circumstances of each case. While "the Ninth Circuit has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, the Court has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding the later to be in violation of the [C]onstitution." Minifield v. Butikofer, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citing Schwenk v. Hartford, 204 F.3d 1187, 1198 (9th Cir. 2000). Likewise, allegations of verbal harassment generally do not state a claim under the Eighth Amendment. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). However, "[v]erbal harassment may violate the Constitution when it is 'unusually gross even for a prison setting and [is] calculated to and [does] cause [plaintiff] psychological damage.'" Cox v. Kernan, 2019 WL 6840136, *5 (E.D. Cal. Dec. 16, 2019) (quoting Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996)).

Despite Keenan's rule, courts appear to be reluctant to recognize a verbal sexual harassment claim under the Eighth Amendment. For example, while a "defendant's alleged statement telling plaintiff to show him her breasts would clearly be highly inappropriate, deeply offensive and disrespectful, and would serve no legitimate penological objective, court decisions addressing such claims do not support a conclusion that those alleged comments can be characterized as 'unusually gross even for a prison setting' or as being calculated to cause plaintiff psychological damage." Moore v. Calderon, 2021 WL 1541296, at *2 (E.D. Cal. Apr. 20, 2021) (citing Patrick v. Hernandez, 2018 WL 5095130, at *1, *3 (E.D. Cal. Oct. 17, 2018)

(finding that plaintiff failed to state a claim for verbal sexual harassment in violation of the Eighth Amendment despite his allegations that defendant verbally harassed him by telling plaintiff, *inter alia*, to "suck my dick," "lick my nuts," and "you want it in the ass"). The court in Moore cited at least ten other cases supporting the proposition that highly inappropriate comments of a sexual nature do not give rise to a verbal harassment claim under the Eighth Amendment. See Moore, 2021 WL 1541296, at *2. The court went on to say:

> The comments allegedly made by the defendant here are obviously highly offensive and completely and totally inappropriate. In light of the sheer number of cases in which such highly inappropriate comments of a sexual nature are allegedly made in the prison setting, perhaps it is time for the Ninth Circuit to reevaluate and address the contours of those circumstances in which the comments are sufficiently "gross even for a prison setting" and to lead to an inference of being calculated to cause psychological damage, so as to state a cognizable Eighth Amendment claim. Until and unless that happens, however, "unfortunately for plaintiff, the law is clear: verbal harassment, even if sexual in nature, does not without more violate the Constitution."
>
> Id. (citations omitted).

Allegations of name-calling, verbal abuse, or threats generally are not unusually gross for a prison setting. See Carpenter v. Molina, 2021 WL 2226635, at *3 (E.D. Cal. June 2, 2021).

Here, Plaintiff's eighth and ninth claims allege Defendant Sandoval, in violation of the Eighth and Fourteenth Amendments, verbally harassed Plaintiff because Plaintiff identifies as transgender. Considering the Ninth Circuit has established verbal harassment does not generally state an Eighth or Fourteenth Amendment claim, this Court sees Keenan as instructive with Moore as jurisdictional guidance. Although "faggot" is a deeply offensive and disrespectful term devoid of a penological objective, the use of such a term is not "unusually gross even for a prison setting." Considering these did not measure to the "unusually gross" standard, "faggot" or "let me find out you're a faggot" likely do not either. While the use of the term is aggravated by Plaintiff's transgender status, and this Court sees it as intentional and arbitrary discrimination, it does not create a cause of action without more than the use of derogatory language. Further, Plaintiff acknowledges some redress by asserting Defendant Sandoval apologized to Plaintiff

"because he knows he is in the wrong." This shows the use of "faggot" did not escalate beyond a verbal encounter.

Accordingly, Plaintiff's eighth and ninth claims are insufficient to state a constitutional deprivation under § 1983. The claims are not subject to cure by amendment.

**III. CONCLUSION**

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state cognizable claims, if no amended complaint is filed within the time allowed therefor, the Court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claims.

/ / /

/ / /

/ / /

/ / /

/ / /

Accordingly, IT IS HEREBY ORDERED that Plaintiff may file a first amended complaint within 30 days of the date of service of this order.

Dated: July 17, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE